UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GARY JAMES MINTER,

    Plaintiff,

    v.

CAROLYN COLVIN, Acting
Commissioner, Social Security
Administration,

    Defendant.

Case No. 1:14-CV-00894-CRC-AK

## MEMORANDUM OPINION

This matter comes before the Court upon Gary Minter's objections to the Report and Recommendation issued by Magistrate Judge Alan Kay on August 17, 2015. Minter seeks judicial review of a final decision issued by the Commissioner of the Social Security Administration ("SSA") denying his Title XVI application for supplemental security income ("SSI") and Title II application for disability and disability insurance benefits ("DIB"). The Magistrate Judge concluded that the Commissioner's determination that Minter is not disabled was supported by substantial evidence and made under the appropriate legal standard. Magistrate Judge's Report & Recommendation ("R&R"), ECF No. 17, at 1. He therefore recommended that Minter's motion for reversal or, in the alternative, for remand be denied and that the Commissioner's motion for affirmance be granted. Id. at 33.

The Magistrate Judge's report explained that "any party who objects to the Report and Recommendation must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of [it]" and "advised that failure to timely file objections to the findings and recommendations set forth in th[e] report may waive the[] right of appeal from an order of the

District Court that adopts such findings and recommendation." Id. (citing Thomas v. Arn, 474 U.S. 140, 147–48 (1985)). Upon consideration of the record, and hearing no objection from Minter, the Court issued an order on September 3, 2015 adopting the Report and Recommendation with one minor typographical correction. On September 11, 2015, Minter moved the Court to vacate its order, explaining that his counsel had, "through good faith belief and by inadvertent mistake," miscalculated the amount of time he had to file an objection. Pl.'s Mot. Vacate, ECF No. 19, at 1. The Court granted Minter's motion so that it could consider his late-filed objections. See Order of Oct. 16, 2015.

Minter objects to the Report and Recommendation in two respects. First, he claims that the Magistrate Judge misapplied the so-called treating-physician rule, which prohibits an Administrative Law Judge ("ALJ") from rejecting opinions offered by a social security benefits claimant's treating physician without explaining his reasons for doing so. Pl.'s Objections to Magistrate Judge's Report & Recommendation ("Pl.'s Objections") 2. The Court agrees that the ALJ and Appeals Council did not properly consider the opinions of Minter's treating physician. Because the determination at the third step of the disability evaluation process may have differed had those opinions been afforded substantial weight, any error is not harmless and remand is appropriate. Second, Minter claims that the Magistrate Judge "erred in adopting the Commissioner's position that . . . additional evidence presented to the [SSA] Appeals Council was irrelevant under the applicable statutes." Id. The Court finds, however, that the Appeals Council did consider the additional evidence Minter references—records stemming from the North Carolina state retirement system—and properly discounted that evidence given its marginal probative value. Remand on that basis is therefore inappropriate. As a result, the Court will adopt in part the Magistrate Judge's recommendation. It will grant in part Minter's motion and remand the case with instructions to afford appropriate weight to the opinions of Minter's treating physician in

determining whether Minter's impairments meet or medically equal Listing 12.04, and it will deny the Commissioner's motion for affirmance. The Court will also adopt the findings and reasoning in the Magistrate Judge's report except as indicated in the discussion below.

**I. Background**

The factual background of this matter is fully set forth in the Magistrate Judge's Report and Recommendation. See R&R 2–7. In brief, Minter—a Duke University graduate and former analyst and field worker for the North Carolina Department of Health and Human Services—filed applications for DIB and SSI on October 14, 2010, claiming that he had been disabled as a result of major depressive disorder since January 2009. R&R 6. For over a year prior to filing his applications, Minter had been living in a Raleigh, North Carolina motel, where he "spent the majority of his days in his room." R&R 3. "This living arrangement ultimately depleted [Minter's] life savings, however, and he became homeless in late 2010." Id. The following spring, Minter moved to Washington, D.C. Although unemployed, Minter sold the "Street Sense" newspaper for "roughly 10-15 hours per week," id. at 4, and was able to engage in everyday activities such as taking public transportation, doing his laundry, and shopping in stores, id. at 5–6.

Minter was not receiving mental-health treatment when he filed his applications. A decade earlier, however, he had been treated for bipolar disorder and received short-term disability benefits from the State of North Carolina. Id. at 2. He was also diagnosed with depression in 2008 by a doctor in China, where Minter was working for a time as an English teacher. Id. After filing his applications, Minter received psychiatric treatment from two community-health clinics serving the homeless and, in December 2012, was diagnosed by Dr. Ronald Koshes, a psychiatrist affiliated with Georgetown University, with "Major Depressive Disorder, Severe, Recurrent, with Psychotic features." Id. at 6.

The SSA denied both of Minter's applications on the written record. An ALJ confirmed the denial following an administrative hearing, and the Appeals Council affirmed the ALJ's decision after receiving additional comments and evidence from Minter. Id. at 6–7. Minter timely filed this suit on May 27, 2014.

**II. Standard of Review**

Local Civil Rule 72.3(c), based on 28 U.S.C. § 636(b)(1), requires "[a] district judge [to] make a *de novo* determination of those portions of a magistrate judge's findings and recommendations to which objection is made." A district judge is not required, however, to review those portions of a magistrate judge's report not objected to. See Thomas v. Arn, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."). The district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

"Pursuant to Section 205(g) of the Social Security Act, district courts review decisions of the SSA Commissioner, made through the ALJ [or Appeals Council], to determine whether [her] findings are supported by substantial evidence in the record." Porter v. Colvin, 951 F. Supp. 2d 125, 129 (D.D.C. 2013) (citing 42 U.S.C. § 405(g)). The Court must uphold the Commissioner's determination if it is not tainted by an error of law and is supported by substantial evidence, Smith v. Bowen, 826 F.2d 1120, 1121 (D.C. Cir. 1987), "mean[ing] such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, 402 U.S. 389, 401 (1971); see also Fla. Gas Transmission Co. v. FERC, 604 F.3d 636, 645 (D.C. Cir. 2010) (describing substantial evidence as "more than a scintilla, but . . . something less than a preponderance of the evidence") (quoting FPL Energy Me. Hydro LLC v. FERC, 287 F.3d 1151, 1160 (D.C. Cir. 2002)). The Court must afford "'considerable deference' to decisions rendered by

4

the ALJ and Appeals Council; nevertheless, [it] 'remains obligated to ensure that any decision rests upon substantial evidence.'" Porter, 951 F. Supp. 2d at 129 (quoting Davis v. Shalala, 862 F. Supp. 1, 4 (D.D.C. 1994)).

It is also incumbent upon the Court to assess "whether the Commissioner . . . 'has analyzed all evidence and has sufficiently explained the weight [s]he has given to obviously probative exhibits.'" Lane-Rauth v. Barnhart, 437 F. Supp. 2d 63, 65 (D.D.C. 2006) (quoting Butler v. Barnhart, 353 F.3d 992, 999 (D.C. Cir. 2004)). The ALJ is "entitled to weigh conflicting opinions and to make his own assessment of their credibility," Brown v. Bowen, 794 F.2d 703, 705 (D.C. Cir. 1986), but "cannot merely disregard evidence which does not support his conclusion," Martin v. Apfel, 118 F. Supp. 2d 9, 13 (D.D.C. 2000). Although "the broad purposes of the Social Security Act require a liberal construction in favor of disability," Davis, 862 F. Supp. at 4, the Court "is not permitted to re-weigh the evidence and reach its own determination," Maynor v. Heckler, 597 F. Supp. 457, 460 (D.D.C. 1984).

**III. Analysis**

Minter objects to two aspects of the Magistrate Judge's Report and Recommendation. First, Minter contends that the Appeals Council found irrelevant and inappropriately disregarded additional evidence that he provided to it in the form of records from the North Carolina state retirement system. As a result, Minter argues, the Magistrate Judge "erred in holding that the Appeals Council's . . . treatment of this additional evidence was supported by substantial evidence." Pl.'s Objections 2. Second, Minter claims that the ALJ improperly rejected, without explanation, the opinion of Minter's treating physician, Dr. Koshes—specifically, his opinion regarding Minter's difficulties in social functioning. The Magistrate Judge's acceptance of the ALJ's findings, made

without considering Dr. Koshes's opinion, thus constituted a misapplication of the treating-physician rule. Id. The Court discusses both of Minter's arguments below.

### A. The Appeals Council's Consideration of Additional Evidence

Minter claims that the Appeals Council failed to consider certain additional evidence he submitted to it after the ALJ issued his opinion but before the Appeals Council heard his case. Specifically, Minter provided documentation showing (1) that in October 1999, the State of North Carolina, for which he worked at the time, approved his request to take medical leave, thereby making him eligible to receive short-term disability benefits under the state's disability income plan; (2) that a physician believed he suffered from bipolar disorder—and began prescribing him lithium—when she first started treating him in November 1999; and (3) that the same physician recommended that he take additional time off from work for the State after his medical leave ended. Pl.'s Objections 9–10. Minter apparently remained under a physician's care for bipolar disorder through at least 2001. Id. at 10. He contends that this evidence supports his claim that he "previously suffered from a year-long bout of decompensation from 1999 to 2001," id. at 9, which in turn "bolsters [his] claim that he suffered from decompensation from 2008 leading up to the time he filed for DIB and SSI on October 14, 2010," id. at 3.

To place this evidence in context, the Court will briefly explain the relevance of Minter's history of "decompensation."[1]  After finding that Minter had not engaged in substantial gainful

---

[1] Under SSA regulations:

> Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two).

20 C.F.R. pt. 404, subpt. P, app. 1, 12.00(C)(4).

activity since the onset of his alleged disability and that he suffered from "the severe impairments of major depression and lethargy," the Commissioner—acting through the ALJ or Appeals Council—was required to determine whether those impairments "met or medically equal[ed]" a listed impairment contained in 20 C.F.R. pt. 404, subpt. P, app. 1. As the Magistrate Judge explained,

> If the impairment(s) meets or equals a listed impairment . . . , the SSA will find the claimant is disabled, regardless of vocational factors. The listed impairments "are descriptions of various physical and mental illnesses and abnormalities . . . defined in terms of several specific medical signs, symptoms, or laboratory test results." Sullivan v. Zebley, 493 U.S. 521, 529–30 (1990) (citing 20 C.F.R. pt. 404, subpt. P, app. 1). In order to match a listing, an impairment "must meet all of the specified medical criteria." Id. Because [Minter] was found to have a mood disorder, specifically an affective disorder, his impairment must meet or equal the criteria of Listing 12.04. To do so, he must [either] meet [the paragraph A requirements and] the paragraph B [requirements], "a set of impairment-related functional limitations," *or* the paragraph C [requirements], "additional functional criteria."

R&R 14 (citations omitted) (emphasis added).

To qualify for disability insurance benefits under Paragraph C of Listing 12.04, in addition to having a medically documented history of a chronic affective disorder of at least two years' duration that has caused more than a minimal limitation of ability to do basic work activities, Minter must have experienced one of the following:

> 1. Repeated episodes of decompensation, each of extended duration; or
>
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. pt. 404, subpt. P, app. 1, 12.04(C). The ALJ found that "the evidence fail[ed] to establish the presence of [any of the three] 'paragraph C' criteria." AR 51. If Minter is correct, however, that he suffered from repeated episodes of extended decompensation during his alleged disability,

7

then he would satisfy one of the Paragraph C criteria, his mood disorder would "medically equal" a listed impairment, and he would qualify for disability insurance benefits. Minter consequently urges that the ALJ's conclusion that he "has experienced no episodes of decompensation [that] have been for extended duration," AR 51, is not supported by substantial evidence, see Pl.'s Objections 2.

While it is true that the ALJ was never presented with the additional evidence Minter identifies, the Appeals Council did consider the evidence and incorporate it into the record. See AR 5. This evidence did not alter its opinion, shared by the ALJ, that Minter's severe impairments "do not meet or equal in severity an impairment in the Listing of Impairments." Id. Minter reasonably argues that the extended period or periods of decompensation he claims to have experienced in the late 1990s and early 2000s make it more likely, all else equal, that he experienced an extended episode of decompensation between 2008 and when he applied for disability benefits in 2010. Yet the Appeals Council considered this very argument and rejected it in favor of countervailing evidence that Minter "worked successfully for nine years following the award of short-term disability benefits," and that, during his alleged disability, he did not "seek emergency room treatment for mental health complaints[ or] require inpatient psychiatric care." Def.'s Response 5-6; cf. 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00(C)(4) ("Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household).").

Minter's potential episode of decompensation nearly a decade before the alleged onset of his claimed disability in 2008 is not completely irrelevant to his claim that he experienced decompensation after his alleged disability-onset date. Cf. Carlson v. Colvin, No. 14-CV-00531-NC, 2015 WL 693902 (N.D. Cal. Feb. 18, 2015) (holding that an ALJ may not decline entirely to

consider medical records simply because he considers them "too old"). But the extended period of time between any purported prior decompensation and the onset of Minter's current alleged disability reduces its probative value in assessing Minter's present claim. Minter's evidence is also weakened by the other evidence (or lack thereof) that led the ALJ and Appeals Council to conclude that he had not suffered from repeated episodes of decompensation—a criterion under paragraph C (as well as paragraph B) of Listing 12.04. Because the Appeals Council considered this additional evidence and treated it appropriately, the Court rejects Minter's "additional evidence" objection to the Magistrate Judge's Report and Recommendation.

### B. The ALJ's Application of the Treating-Physician Rule

As noted above, a claimant's impairment "can meet or medically equal" the criteria of Listing 12.04 in one of two ways: (1) when the requirements of both paragraphs A and B of that listing are satisfied, or (2) when the requirements of paragraph C of that listing are satisfied. In determining that Minter's mental impairments did not meet or medically equal the criteria of Listing 12.04, the ALJ "considered whether the 'paragraph B' criteria [were] satisfied," found that Minter did not satisfy any of those criteria, and thus determined that Minter's condition did not fit the first possible manner of meeting or medically equaling the criteria of Listing 12.04.

Minter would satisfy the requirements of paragraph B if his mental impairments resulted in any two of the following:

    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence, or pace; or
    4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. pt. 404, subpt. P, app. 1, 12.04(B). "'Marked' is the 'standard for measuring the degree of limitation,' indicating 'more than moderate but less than severe.'" R&R 15 (quoting 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)). Minter contends that the ALJ ignored the opinion of his

treating physician, Dr. Koshes, who, according to Minter, "opined that Mr. Minter suffers from severe symptoms that prevent normal social functioning." Pl.'s Objections 3. Because the ALJ rejected Dr. Koshes's opinion in this regard, Minter suggests, the treating-physician rule required him to explain why. In the absence of such explanation, Minter contends, remand is necessary.

The Court agrees with Minter that the ALJ deviated from the treating-physician rule, which is premised on the idea that "a claimant's treating physicians have great familiarity with [his] condition," and mandates that "their reports must be accorded substantial weight." Jones v. Astrue, 647 F.3d 350, 355 (D.C. Cir. 2011) (quoting Butler v. Barnhart, 353 F.3d 992, 1003 (D.C. Cir. 2004)); see also R&R 11 ("Unless it is contradicted by substantial evidence, a treating physician's opinion is generally binding on the fact-finder.") (citing Williams v. Shalala, 997 F.2d 1494, 1498 (D.C. Cir. 1993)). The D.C. Circuit "thus require[s] an ALJ 'who rejects the opinion of a treating physician [to] explain his reasons for doing so.'" Id. (quoting Butler, 353 F.3d at 1003). In Minter's case, the ALJ did not heed this directive because he apparently rejected (or ignored altogether) the report from Minter's treating physician as to Minter's social difficulties and offered no explanation for doing so.

In assessing whether Minter met the second criterion under Paragraph B—marked difficulties in maintaining social functioning—the ALJ found "no evidence in the record that [Minter] has problems in getting along with others." This finding is demonstrably erroneous, as the Magistrate Judge recognized. See R&R 24. In a letter dated July 18, 2012, Dr. Koshes explained that Minter "has gotten into conflicts with his employers"; "shows a poor ability to cooperate with those in authority"; "has gotten into conflicts [in his job selling newspapers] with those who are helping him sell the newspaper, customers who buy it, and those who pass by"; and experiences "conflict with the general public." AR 307. This letter, which makes up part of the record the ALJ had before him, clearly provides *some* evidence that Minter experienced problems in getting along

10

with others.  Had the ALJ appropriately considered this evidence, he surely would have concluded as much, even if he ultimately were to determine, under the various factors that guide an ALJ's evaluation of a treating physician's medical opinion, see Butler, 353 F.3d at 1003 n.7, that this report did not merit substantial weight or that it did not demonstrate that Minter in fact experienced *marked* difficulties in maintaining social functioning.

Any error in this regard was harmless, the Commissioner argues, in light of the requirement that a claimant satisfy *two* of the four criteria under Paragraph B.  In other words, even if Dr. Koshes's letter establishes that Minter experienced marked difficulties in maintaining social functioning, Minter would have satisfied only one of those four criteria.  The Magistrate Judge reasonably agreed, see R&R 24, given the limited nature of Minter's objection, but the Court believes that full consideration of the opinions expressed by Dr. Koshes could lead the Commissioner to reach a different result as to the other Paragraph B criteria as well.  For instance, in addition to ignoring entirely Dr. Koshes's assessment of Minter's difficulties in social functioning, the ALJ did not acknowledge that Dr. Koshes indicated that Minter suffers from "concentration problems" (relevant to the third Paragraph B criterion) or "inability to perform ADLs [Activities of Daily Living]" (relevant to the first Paragraph B criterion).  AR 306.  Nor did the ALJ, in finding that Minter "has experienced no episodes of decompensation," AR 51, address Dr. Koshes's opinion that "[a]ny attempt to return to competitive employment at this time is likely to result in *further* decompensation of [Minter's] mental state with resultant psychotic symptomatology," id. at 307 (emphasis added), which at least suggests that Dr. Koshes believed Minter had in fact experienced a recent bout of decompensation.

Even though these brief remarks might not have led the ALJ to find that Minter experienced "marked" restrictions and difficulties or repeated episodes of decompensation, a second letter from Dr. Koshes—which the Appeals Council, but not the ALJ, had before it—might have provided

11

additional support for such a finding. In that letter, Dr. Koshes explained that Minter's "inability to adapt to a life spiraling out of control has affected his interactions with others" and revealed that Minter received a score of 45 on the Global Assessment of Functioning ["GAF"] Scale, which measures a person's "psychological, social, and occupational functioning." AR 382–84. A score in that range indicates a "serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Id. at 384.

ALJs routinely consider available GAF scores in assessing whether a claimant satisfies any or all of the criteria of paragraph B, see, e.g., Youngblood v. Colvin, No. 1:14-CV-204-WTL-DKL, 2015 WL 667993, at *3 (S.D. Ind. Feb. 17, 2015), and sometimes find the score assigned by a claimant's treating psychiatrist to be "extremely significant," McCormick v. Colvin, No. CIV.A. 14-0399-C, 2015 WL 4713698, at *5 (S.D. Ala. Aug. 7, 2015) (quoting the findings of an ALJ). In particular, GAF scores help ALJs to evaluate the *severity* of the symptoms of a claimant's mental impairment under Paragraph B. See, e.g., Hankerson v. Comm'r of Soc. Sec., No. CIV.A. 13-6793 ES, 2015 WL 4064671, at *5 (D.N.J. July 1, 2015). ALJs have even consulted the GAF score assigned by a claimant's treating physician in determining whether that claimant has experienced "episodes of decompensation"—a relevant criterion under both Paragraph B and Paragraph C. See Weisser v. Comm'r of Soc. Sec., No. 2:13-CV-1046, 2014 WL 66390, at *6 (W.D. Pa. Jan. 8, 2014).

To be sure, "GAF scores, standing alone, do not automatically warrant a finding of disability or that a claimant equals a Listing," White v. Colvin, No. 1:14-CV-508-WTL-TAB, 2015 WL 1969636, at *3 (S.D. Ind. May 1, 2015), and this Court does not hold otherwise. It simply observes that ALJs typically at least "note . . . [a claimant's] GAF score . . . and consider[] it as one piece of evidence" in this context. Id. A GAF score may not be determinative of whether a claimant satisfies the paragraph B criteria, but when ALJs conclude that a claimant experiences only mild

restrictions or moderate difficulties even though the claimant has a very low score, they tend to at least explain why "the record as a whole did not support such a low score." Jenkins v. Comm'r, Soc. Sec. Admin., No. CIV. SAG-13-1967, 2014 WL 1870845, at *3 (D. Md. May 5, 2014). Indeed, if courts and ALJs regularly invoke a claimant's *high* GAF score in explaining why paragraph B criteria are not met, see, e.g., Cole v. Comm'r of Soc. Sec., No. 2:13-CV-250, 2014 WL 3809794, at *10 (S.D. Ohio Aug. 1, 2014); Dean v. Astrue, No. CIV.A. 10-65-KSF, 2011 WL 676110, at *4 (E.D. Ky. Feb. 17, 2011), it is only logical that ALJs should explain why Paragraph B criteria are not met despite a claimant's *low* GAF score.

Courts have remanded for further consideration when the Commissioner completely ignores a GAF score assigned to a plaintiff by his treating physician. See, e.g., Thornton v. Astrue, No. CA 2:09-0461-C, 2010 WL 1542509, at *5 (S.D. Ala. Apr. 19, 2010) ("The ALJ's decision to ignore the GAF score given to Thornton by a medical source constitutes reversible error and must be addressed on remand."); Edwards v. Colvin, No. 5:12-CV-821-BO, 2014 WL 808855, at *2 (E.D.N.C. Feb. 28, 2014).  But see Anthony v. Astrue, No. 09-3252, 2010 WL 4683955, at *12 (C.D. Ill. Oct. 26, 2010) ("The ALJ is not required to specifically address GAF scores, which 'are intended to be used to make treatment decisions, . . . not as a measure of the extent of an individual's disability.'" (quoting Jaskowiak v. Astrue, 2009 WL 2424213, at *12 (W.D. Wis. Aug. 6, 2009))).  To be clear, though, this Court does not remand because of the Commissioner's "failure to reference the GAF score . . . , standing alone." Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002) (unpublished).  It remands, rather, because of the Commissioner's apparent disregard of Dr. Koshes's opinion as a whole—from his descriptions of Minter's social difficulties and his findings on Minter's struggles with concentration and performing ADLs to his assessment of Minter's GAF score, none of which the ALJ or Appeals Council seems to have referenced or considered in assessing whether Minter met the requirements of Paragraph B or Paragraph C.  The

13

Court does not express a view one way or the other as to whether Minter satisfies any of the applicable criteria, but it strikes the Court that proper consideration of this evidence from Minter's treating physician may affect the Commissioner's ultimate determination in that regard.  On remand, in accordance with the treating-physician rule, the ALJ should give substantial weight to Dr. Koshes's reports and opinions or else clearly reject them and explain his reasons for doing so.

Finally, the Court finds it significant that the ALJ appears to have based his assessment of Minter's failure to satisfy any of the Paragraph B criteria primarily on Minter's own testimony.  See AR 50–51 (making findings as to "activities of daily living"; "social functioning"; and "concentration, persistence or pace" by reference to what Minter "testified . . . [a]t the hearing.").  The ALJ does not acknowledge, however, Dr. Koshes's words of caution:  "Mr. Minter is a proud man who will down-play the seriousness of his symptomatology and the resultant disabling effects of his depression.  He is currently not treated with medication because he does not think his condition is an emotional one."  AR 307.  Neither did the Appeals Council address this information, or the additional commentary Dr. Koshes provided to it:  "[Minter's] appearance and demeanor suggest he is better than he actually is.  He does attempt to hide his psychotic symptoms.  My further opinion is that Mr. Minter does not fully comprehend the severity of his mental impairment, and therefore is reluctant to engage in treatment."  AR 382.  The ALJ's and Appeals Council's lack of discussion or explanation on this point, combined with heavy reliance on Minter's self-reporting, strongly suggest that they did not fully take this obviously probative information into account.  On remand, the ALJ should consider the reliability of Minter's testimony in regard to the severity of his symptoms and the effects of his depression.

**III. Conclusion**

For the foregoing reasons, the Court will deny the Commissioner's motion for judgment of affirmance and grant in part Plaintiff's motion for judgment of reversal, or, in the alternative, for remand.  It will remand this matter to the Commissioner for additional consideration consistent with the Court's opinion.


Date:   February 23, 2016

CHRISTOPHER R. COOPER
United States District Judge